# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARK STAAKE,

    Plaintiff,

v.                                                                                                                       No. 20-cv-356 WJ-SCY

WEXFORD HEALTH SOURCES, *et al,*

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Mark Staake's Prisoner Civil Rights Complaint (Doc. 1). Plaintiff is *pro se* and proceeding *in forma pauperis*. He alleges prison officials violated the Eighth Amendment and were negligent for failing to treat his back injury. Having reviewed the matter *sua sponte* under 28 U.S.C. § 1915(e), the Court concludes certain claims survive initial review, and certain claims must be dismissed with leave to amend, as set forth below.

## **BACKGROUND**[1]

Plaintiff was previously incarcerated at the Penitentiary of New Mexico (PNM). On May 16, 2018, he was using a seated rowing machine that pulls a 260-pound weight. *See* Doc. 1 at 3. At some point, the cable connected to the weight snapped. *Id.* The force threw Plaintiff backwards toward the concrete, and he landed on his shoulders, back, and head. *Id.* He felt a searing pain in his back and was initially only able to walk hunched over at the waist. *Id.* When he arrived at the PNM medical unit, Officer Cardenas allegedly said: "I've been trying to get those fixed for two

---

[1] The background facts are taken from Plaintiff's complaint (Doc. 1). For the limited purpose of this ruling, the Court assumes Plaintiff's allegations are true.

years, maybe this will help." *Id.* Dr. Zagon initially declined to order an x-ray but issued a seven-day "lay in" pass, crutches, ice, and Tylenol. *Id.* at 4. It appears Plaintiff was already taking medication for an existing leg injury, including 80 mg of Baclofen, a skeletal muscle relaxant, and 100 mg of Elavil, an anti-depressant that also treats nerve pain. *Id.* at 4.

About five days later, Plaintiff visited Dr. French, who oversees PNM medical facilities. *See* Doc. 1 at 3. Plaintiff reported excruciating pain and that he could not sit up without assistance. *Id.* Dr. French suggested a prescription for Baclofen, the muscle relaxant, but Plaintiff declined on the basis that he was already taking the maximum dose. *Id.* On or about May 31, 2018, Plaintiff was taken to another prison for x-rays. *Id.* at 4. His back was not broken, but Dr. French could not rule out a disk injury or damage to the nerve/spinal cord. *Id.* Dr. French declined to recommend surgery or a steroid shot at that time, but it appears he prescribed a TheraBand physical therapy tool to supplement the existing orders for Tylenol, Baclofen, and Elavil. *Id.* Plaintiff later asked for an MRI, but Dr. French allegedly stated he would not "waste the resources on [Plaintiff]." *Id.*

On June 30, 2018, Plaintiff committed an unspecified infraction at PNM's main facility. *See* Doc. 1 at 4. He was transferred to PNM South, and it appears Dr. French immediately cancelled all of Plaintiff's prescriptions. *Id.* at 4. Discontinuing the use of Elavil without tapering can purportedly cause respiratory and cardiovascular problems. *Id.* Plaintiff submitted multiple sick-call requests, and he saw Ellen Whittman two weeks later. *Id.* Whittman allegedly accused Plaintiff of malingering but ordered trigger-point injections for Plaintiff's back. *Id.* at 4-5. Dr. French refused to give Plaintiff the injections, even though Whittman ordered them three times. *Id.* at 6. When Plaintiff asked Dr. French why his medication was discontinued, Dr. French allegedly responded: "I don't believe in it." *Id.* at 4. Plaintiff contends that by July of 2018, he

was experiencing hallucinations from sleep deprivation. *Id.* A mental health provider prescribed 50mg of Elavil, the anti-depressant that treats nerve pain. *Id.* at 4. However, Dr. French allegedly falsified Plaintiff's medical chart to indicate he is allergic to Elavil. It appears Plaintiff never received the injections Whittman ordered or the Elavil, and he spent 42 days in severe pain at PNM South. *Id.*

Upon his release from segregation, Plaintiff was transferred to Northwest New Mexico Detention Facility (NNMDF). *See* Doc. 1 at 5. Plaintiff requested a TheraBand and a prescription for Baclofen, which NNMDF staff initially refused to provide. *Id.* They eventually sent Plaintiff to the hospital for treatment, and a physical therapist ordered a new TheraBand. *Id.* Health Service Administrator (HSA) Martinez would not permit Plaintiff to keep the TheraBand in his cell, citing NNMDF policy, but gave him a pass to use it in the medical unit for seven days at 9:00 a.m. *Id.* It appears Plaintiff declined because he did not want to do physical therapy during that time slot, before his pain intensified. *Id.* Plaintiff was eventually transferred to Lea County Correctional Facility (LCCF), where he experienced the same issues. *Id.*

Construed liberally, the Complaint raises claims for deliberate indifference to medical needs under the Eighth Amendment and 42 U.S.C. § 1983, medical negligence, and negligent supervision. Plaintiff seeks unspecified damages from four named Defendants: (1) Dr. French; (2) Wexford Health Sources (Wexford), the entity providing health services to the New Mexico Corrections Department (NMCD); (3) Ellen Whittman; and (4) HSA Martinez. *See* Doc. 1 at 1. Plaintiff obtained leave to proceed *in forma pauperis*, and the matter is ready for initial review.

## STANDARDS GOVERNING *SUA SPONTE* REVIEW

Section 1915(e) of Title 28 requires the Court to screen an *in forma pauperis* complaint and dismiss any claims that are frivolous, malicious, or fail to state a claim on which relief may be

granted. 28 U.S.C. § 1915(e). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellman,* 935 F.2d 1106, 1110 (10th Cir. 1991). While *pro se* pleadings are judged by the same legal standards that apply to represented litigants, the Court should overlook the "failure to cite proper legal authority, … confusion of various legal theories, … poor syntax and sentence construction, or … unfamiliarity with pleading requirements." *Id.* Further, *pro se* plaintiffs should ordinarily be given the opportunity to cure defects in the original complaint, unless amendment would be futile. *Id.* at 1109.

## DISCUSSION

The crux of the Complaint is that Defendants failed to treat Plaintiff's back injury in violation of the Eighth Amendment and state negligence principles. Prison officials can be liable under the Eighth Amendment for "deliberate indifference to a substantial risk of serious harm to an inmate." *Farmer v. Brennan,* 511 U.S. 825, 828 (1994). The deliberate indifference test requires plaintiffs to "satisfy an objective prong and a subjective prong." *McCowan v. Morales*, 945 F.3d 1276, 1291 (10th Cir. 2019) (quotations omitted). The objective prong requires a substantially serious medical need, which is satisfied "if a physician directed further treatment after diagnosing the condition or the need for a doctor's attention would be obvious to a lay person." *Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021). The objective prong is also met if

the medical issues cause a "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (quotations omitted). Where the issues stem from a delay in care, such delay must cause a "permanent loss[ ] or considerable pain." *Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018) (quotations omitted).

To satisfy the subjective prong of the deliberate-indifference test, the complaint must include "evidence of [each individual] prison official's culpable state of mind." *Id.* at 751. The complaint must show each defendant knew plaintiff faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it. *Martinez v. Garden,* 430 F.3d 1302, 1304 (10th Cir. 2005). "A plaintiff may prove awareness of a substantial risk through circumstantial evidence that the risk was obvious." *Lance*, 985 F.3d at 794. Finally, to show medical negligence, "(1) the defendant owed the plaintiff a duty recognized by law; (2) the defendant breached the duty by departing from the proper standard of medical practice recognized in the community; and (3) the acts or omissions complained of proximately caused the plaintiff's injuries." *Brown v. Kellogg*, 340 P.3d 1274, 1275 (N.M. App. 2014).

**A. Dr. French and Wexford**

Plaintiff alleges Dr. French withheld all prescriptions after Plaintiff committed some infraction. Discontinuing Elavil - an antidepressant that treats nerve pain - without tapering can cause respiratory and cardiovascular problems. After a mental health provider reinstated Plaintiff's prescription for Elavil, Dr. French allegedly falsified Plaintiff's chart to reflect he was allergic to Elavil. Accepting the facts as true, Dr. French knew about Plaintiff's back injury and withheld treatment in a fraudulent and malicious manner. The Complaint therefore warrants an answer from Dr. French. The Court also finds the claims against Wexford survive initial review. Plaintiff alleges Wexford: (1) oversees the medical unit at NMCD facilities, including PNM; (2)

failed to supervise Dr. French; and (3) promulgated policies that inhibit physical therapy and the use of non-formulary medications (*i.e.,* mediations that do not appear on a preferred-drug list).

Ordinarily, the Clerk's Office effectuates service for *pro se* plaintiffs that are proceeding *in forma pauperis*. *See* Fed. R. Civ. P. 4(c)(3). However, the Complaint does not provide an address for Dr. French or Wexford. "[T]he onus [is] squarely on plaintiffs to track down the whereabouts of defendants" so that the Court can "effectuate service, … even when the plaintiffs are in prison." *Washington v. Correia*, 546 Fed. App'x 786, 789 (10th Cir. 2013). Plaintiff must provide a current address for Dr. French and Wexford within thirty (30) days of entry of this Order. The failure to timely comply may result in dismissal with prejudice of all claims against those Defendants.

### B. Whittman and Martinez

As to the remaining Defendants (Ellen Whittman and HSA Martinez), the Complaint fails to state a claim for deliberate indifference or negligence. Whittman allegedly stated pain was not the same as suffering; recommended yoga; and questioned whether Plaintiff was malingering. Nevertheless, she prescribed trigger point injections after their first appointment, which Dr. French refused to administer. Plaintiff does not specify Whittman's exact role or allege she could have overruled Dr. French on his care decisions. Without that information, the Court cannot conclude she ignored a substantial risk of harm or that she deviated from the standard of medical care. The only concrete allegation about HSA Martinez is that she would not allow Plaintiff to keep his TheraBand in his cell and instead gave him a pass to use it in the medical unit. Plaintiff apparently declined, as he did not wish to do physical therapy at 9:00 a.m. The Complaint does not indicate Plaintiff must perform physical therapy at any specific time for the treatment to be effective or that Plaintiff suffered any serious harm beyond inconvenience. Accordingly, the Court will dismiss

the claims against Whittman and HSA Martinez.

The Tenth Circuit counsels that *pro se* prisoners should ordinarily be given an opportunity to remedy defects in their pleading. *See Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990) ("[I]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend."). The Court will allow Plaintiff to file a supplemental pleading within thirty (30) days of entry of this Order that amends his claims against Whittman and HSA Martinez. The supplemental pleading should specify "what [Defendants Whittman and HSA Martinez] did to [Plaintiff] ...; when [each] defendant did it; how the defendant's action harmed him ...; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). Plaintiff should also specify whether Whittman worked as a midlevel provider under the supervision of Dr. French, and whether she could overrule his care decisions. If Plaintiff declines to timely file a supplemental pleading that states a cognizable claim against Whittman and/or Martinez, the Court will dismiss with prejudice all claims against those Defendants. If no claims remain against any named Defendant, the Court may also dismiss this case with prejudice.

**IT IS FURTHER ORDERED** that within thirty (30) days of entry of this Order, Plaintiff shall provide the current address of Defendants Dr. French and Wexford Health Sources.

**IT IS FURTHER ORDERED** that within thirty (30) days of entry of this Order, Plaintiff shall file a pleading titled "Supplement to Complaint" that amends his claims against Defendants Whittman and Martinez.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE